AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
5/20/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DTA___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
05/20/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___M.B.___ DEPUTY

United States of America

v.

KHANH KIM NGUYEN,

Defendant(s)

Case No. 8:22-mj-00374-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 11, 2020, in Orange County, in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1957 | Engaging in monetary transactions in property derived from specified unlawful activity |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Atish Patel, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 20, 2022

*Judge's signature*

City and state: Santa Ana, California

Hon. John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA: Daniel Ahn (x3539); Daniel Lim (x3538)

**A F F I D A V I T**

I, Atish Patel, being duly sworn, hereby declare and state as follows:

## A. INTRODUCTION

1. I am a Special Agent ("SA") of Internal Revenue Service, Criminal Investigation ("IRS-CI") and have served in this capacity since in or around September 2005. I am currently assigned to the Santa Ana Post of Duty of the Los Angeles Field Office of IRS-CI. As an IRS-CI SA, I have investigated various types of federal crimes, including criminal violations of the Internal Revenue laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), Money Laundering Control Act laws (Title 18, United States Code, Sections 1956 and 1957), and related offenses, including identity theft and wire fraud. My professional and academic training includes approximately six months of training at the Federal Law Enforcement Training Center in Glynco, GA. This training included criminal investigative training with courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants.

2. In addition to criminal investigative training, I completed a Special Agent Basic Training course, which included courses in financial investigative techniques, legal principles, and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31. Further, I have attended the Advanced Money Laundering seminar at the National Advocacy Center as well as various other money

laundering trainings and seminars. I am certified as an Anti-Money Laundering Specialist. Before I joined IRS-CI, I obtained a Bachelor of Arts degree in Business Administration from California State University, Fullerton.

### B. PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint against and arrest warrant for KHANH KIM NGUYEN ("NGUYEN") for committing money laundering, in violation of Title 18, United States Code, Section 1957.

4. The facts set forth in this affidavit are based upon my personal observations, information obtained from other law enforcement personnel, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### C. SUMMARY OF PROBABLE CAUSE

5. There is probable cause that NGUYEN, from April 2020 to August 2020: (1) applied for an Economic Injury Disaster Loan ("EIDL") from the Small Business Administration ("SBA"); (2) made material misrepresentations regarding use of the loan funds and his role in a company in order to obtain the EIDL loan; and (3) moved the fraudulently obtained loan funds (well over $10,000) -- that had originated from Denver, Colorado -- from one personal bank account to another, which accounts were

opened in Orange County, CA; and (4) used the funds not for working capital for one business as he represented he would, but instead to purchase additional and unrelated property.

### D. **STATEMENT OF PROBABLE CAUSE**

6.  I am part of the Orange County Asian Organized Crime Task Force (OC AOCTF -- which consists of the Federal Bureau of Investigation ("FBI"), IRS-CI, California Department of Justice ("CalDOJ"), Santa Ana Police Department, and various other law enforcement agencies -- and have been since May 2020.  The OC AOCTF has been actively investigating illegal gambling locations known as "nets," "cafes," and "slap houses" throughout the Orange County area.

7.  Based on information from OC AOCTF investigators, FBI SA Gary Chen ("SA Chen"), CalDOJ SA Paul Yasutake ("SA Yasutake"), and T-III intercepted communications, which I have reviewed, I believe that NGUYEN is working for an owner/operator of multiple nets, cafes, and slap houses in Orange County, California, and is responsible for establishing various businesses within the State of California and establishing business bank accounts for that owner/operator.[1]  Specifically,

---

[1]  A federal wiretap was authorized in the Central District of California on or about August 20, 2020, and began on or about August 26, 2020, targeting the owner/operator's mobile phones. Based on the initial intercepted communications between the owner/operator and his associates, the federal wiretap was re-authorized in the Central District of California on or about October 15, 2020, and began on or about October 18, 2020.  The case numbers for these wiretaps are 8:20-CM-00032 and 8:20-CM-00037.

there are multiple communications on the aforementioned wires in which NGUYEN keeps the owner/operator apprised of financial issues related to the nets, cafés, and slap houses, including those in Westminster, California.

8. Based on this information, on or about December 9, 2020, I queried a law enforcement database related to bank filings and learned that NGUYEN had business and personal bank accounts at Chase Bank. NGUYEN's business bank account was opened under the name "Shark Investments, Inc." ("Shark"). Through the California Secretary of State's Business Entity Detail website, I learned that NGUYEN is listed as the owner of Shark. The statement of information lists Shark's address as 8095 Westminster Blvd., Westminster, CA 92683.

9. On or about March 25, 2021, I obtained and reviewed bank signature cards and statements for Shark at Chase Bank. Shark is associated with Chase total business checking account ending in -3801 ("Chase 3801"). Nguyen is the sole signer and authorized user for the account. This account was opened on March 21, 2018, at Chase bank branch located at 14011 Beach Blvd., Westminster, CA 92683.

10. During an analysis of Chase 3801 bank statements, I noticed a deposit on June 10, 2020 for $90,900. The deposit detail on the bank statement lists the originator as "Sbad Treas 310." I know through my training and experience that these are funds from an EIDL loan, and the funds came from the SBA.

11. Based on my training and experience and review of SBA EIDL program guidelines, I know that the EIDL program was an SBA

program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act -- a federal law enacted in or around March 2020 to provide emergency financial assistance to Americans suffering economic harm from the COVID-19 pandemic -- authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

12. In order to obtain an EIDL loan, a qualifying small business had to submit an application to the SBA and provide information about its operations. EIDL applications were submitted directly to the SBA. If the application was approved, the amount of the loan was determined based, in part, on the information provided by the applicant. The entity that applied for the EIDL loan could also request that the SBA provide an advance or emergency grant of $1,000 for each person that the entity employed, up to $10,000.

13. Following the submission of the application, and prior to and as a condition of the disbursement of the loan, the applicant had to sign a Loan Authorization and Agreement ("LA&A"), certifying that, among other things, the loan proceeds would be used solely for business purposes. Any funds issued under an EIDL loan were issued directly by the SBA.

14. On or about March 3, 2021, I sought and received the EIDL loan application and related documents for Shark from the SBA. The April 2, 2020 intake application and related documents

5

confirm that NGUYEN, on behalf of Shark and as the purported CEO and 100% owner of Shark, applied and was approved for a $3,000 advance as well as a loan for $91,000.  Further, on June 7, 2020, NGUYEN signed (via DocuSign) under penalty of perjury the EIDL LA&A, acknowledging that the funds would be used solely for "working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020, and continuing thereafter."  The documentation also shows that the intake application, with NGUYEN's representation that he was the CEO and 100% owner of Shark, and LA&A were both submitted online.

  15.  On or about March 25, 2021, I obtained and reviewed bank signature cards and statements for NGUYEN at Chase Bank.  NGUYEN is the sole signer and authorized user for the Chase total checking account ending in 1597 ("Chase 1597"), which was opened on March 8, 2016, at a Chase Bank branch located at 2569 E. Chapman Ave., Ste. 6A, Fullerton, CA 92831.

  16.  Based on my review of the aforementioned Chase 1597 and Chase 3801 bank records, EIDL records from the SBA, and State of California business entity filings, I saw the following activity, which describes activity from April 2020, when the EIDL application was submitted, to August 2020, when the funds were used for non-business purposes:

| Date | Activity |
|---|---|
| 04/02/2020 | NGUYEN applies online for EIDL and EIDL advance for Shark with the SBA. |
| 04/28/2020 | EIDL advance of $3,000 is deposited into Chase 3801.  The balance in this account was |

6

| | |
|---|---|
| | roughly $26,000 when the $3,000 was deposited. |
| 05/07/2020 | NGUYEN transfers $5,000 from Chase 3801 to Chase 1597. |
| 05/07/2020 | NGUYEN issues a $5,000 check from Chase 1597 to Apex Escrow. |
| 05/26/2020 | NGUYEN submits LLC registration documents to the State of California for Lucky DK Investments LLC ("Lucky DK"). The statement of information sheet filed on June 29, 2020 also lists the aforementioned owner/operator of nets and slap houses as a manager for Lucky DK. I reviewed Chase bank signature cards for Lucky DK. The DBA listed under Lucky DK is Ocean Blue Restaurant & Lounge ("OB") and the address listed is 14541 Brookhurst St., Ste. A3, Westminster, CA 92683. |
| 06/07/2020 | NGUYEN signs the LA&A via DocuSign, certifying that he would use all the proceeds of the loan solely as working capital to alleviate economic injury. SBA approves the EIDL application. He submits the LA&A from IP Address 172.113.242.254, which is an IP Address located in Santa Monica, California, or Los Angeles, |

7

|            |                                                                                                                                                                                                                                    |
|------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | California, based on queries into IP Address location databases.                                                                                                                                                                   |
| 06/10/2020 | $90,900 EIDL loan funds are deposited into Chase 3801. The balance in the account was roughly $16,000 before the $90,900 was deposited.                                                                                             |
| 06/11/2020 | NGUYEN transfers $50,000 to Chase 1597 from Chase 3801.                                                                                                                                                                             |
| 06/12/2020 | Check #160 for $45,000 is issued to United Commercial Holdings, LLC from Chase 1597. The memo line states "for A3 security deposit." Suite A3 is the suite number for OB, as described above.                                       |
| 08/03/2020 | NGUYEN initiates a $45,000 wire transfer from Chase 3801 to Apex Escrow, whose office is located at 15440 Beach Blvd., Suite 131, Westminster, CA 92683.[2]                                                                          |

17. On or about September 15, 2021, I reviewed the escrow file from Apex Escrow for the purchase of OB. I confirmed that: (1) Apex Escrow opened an escrow account for the purchase of OB -- with the same address as above, 14541 Brookhurst St., Ste. A3, Westminster, CA 92683 -- at a price of $80,000; and (2) NGUYEN was the purchaser of OB and that the sale was

---

[2] Notably, on May 17, 2022, SBA Office of Inspector General SA Timothy Massino confirmed to me that EIDL loan proceeds are not to be used to start or expand a business, and that the manner in which NGUYEN used the funds was not authorized. Further, on May 18, 2022, SA Massino confirmed to me that EIDL payments from the SBA are initiated in Denver, Colorado.

completed on or about October 5, 2020. Further, the file contained a receipt for $5,000 of earnest money, or a deposit, from NGUYEN, and a receipt for a $45,000 wire from Shark. The wire originated from Chase 3801.

18. On or about November 9, 2021, I interviewed NGUYEN at his residence located at 11562 Mac St., Garden Grove, CA 92841. During the voluntary interview, NGUYEN admitted he was not the true owner of Shark or Lucky DK, and in fact the aforementioned owner/operator was the true owner. He noted that the owner/operator is at OB daily and runs the business. NGUYEN's responsibilities were to pay the rent and utilities at the businesses and in return he received $1,500 a month from the owner/operator as compensation. According to NGUYEN, the day-to-day operations of Shark were managed by another individual, and they were not NGUYEN's responsibility.

19. During the same interview, NGUYEN initially stated he used the EIDL proceeds to pay for rent, utilities, and payroll. After showing NGUYEN the bank statements for Shark and the movement of EIDL funds from the Shark account to his personal account, NGUYEN admitted he used the EIDL funds to pay for the acquisition of OB and stated it was the aforementioned owner/operator's idea to apply for the EIDL loan.

20. Also during the same interview, NGUYEN stated the owner/operator gives him money to deposit into the bank account(s), and that the deposits are intermingled with funds from both the illegal gambling and café/food sales. NGUYEN

estimated about $20,000 a month was generated from the illegal gambling.

### E. CONCLUSION

21. For all the reasons described above, there is probable cause to believe that NGUYEN has committed a violation of Title 18, United States Code, Section 1957 (money laundering in excess of $10,000).

/s/
ATISH PATEL
Special Agent, IRS-CI

Attested by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of May, 2022.

JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE